BRIAN J. PERKINS (Cal. Bar No. 315870)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 766-3544
Facsimile: (415) 840-9435
Email: bperkins@peifferwolf.com

DANIEL CENTNER (*pro hac vice* pending)
PEIFFER WOLF CARR KANE CONWAY & WISE, LLP
935 Gravier St. Ste. 1600
New Orleans, LA 70112
Telephone: (504) 523-2434
Facsimile: (504)-608-1465
Email dcentner@peifferwolf.com

MARTIN P. SCHRAMA (*pro hac vice* pending)
STEFANIE L. COLELLA-WALSH (*pro hac vice* pending)
STARK & STARK
100 American Metro Blvd.
Hamilton, NJ 08619
Telephone: (609) 895-7261
Facsimile: (609) 895-7395
Email: mschrama@stark-stark.com
scolellawalsh@stark-stark.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

SHAWN CZERWIEN, GEORGE ATTIA, KAREN BUNKER, and GEORGE ADAMS individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

DECKERS OUTDOOR CORPORATION D/B/A HOKA,

Defendant.

CASE NO. 2:25-cv-09654-SVW-JC

Honorable Stephen V. Wilson

**AMENDED CLASS ACTION COMPLAINT**

1. **Breach of Express Warranty;**
2. **Breach of Implied Warranty of Merchantability;**
3. **Breach of the Magnuson-Moss Warranty Act;**
4. **Violations of California Unfair Competition Law;**
5. **Unjust Enrichment;**
6. **Violations of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.**

**JURY TRIAL DEMANDED**

Plaintiffs Shawn Czerwien, George Attia, Karen Bunker, and George Adams (together, "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following based upon personal knowledge as to their own acts and upon information and belief as to all other matters

based on the investigation conducted by and through their attorneys which included, among other things: a review of publicly-available marketing materials, consumer complaints, and other information regarding the claims asserted herein. Plaintiffs believe that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a consumer class action on behalf of purchasers of HOKA Clifton 9 running shoes ("Clifton 9s" or the "Shoes").

2. Plaintiffs allege that Defendant Deckers Outdoor Corporation, which owns and markets the HOKA brand (hereafter, "Defendant" or "HOKA") designed, manufactured, and sold Clifton 9 shoes that suffer from uniform defects that manifest prematurely during ordinary, intended use.

3. HOKA markets its Clifton 9s as premium/high-end training shoes suitable for "everyday miles" covered by runners and walkers alike. Consistent therewith, Defendant touts that the Shoes have an "improved outsole design" over other shoes and a "durabrasion rubber outsole" intended to "extend rubber longevity."

4. Unfortunately, what HOKA promises is not what it delivers. As described below, the Shoes are plagued by a pervasive defect that causes the outsole "pods" lining the bottom of the shoe to **separate from the midsole within weeks, or sometimes even days, of normal use ("Defect")**. This Defect renders the shoes functionally worthless and creates a safety hazard for wearers.

5. The following photograph depicts an example of the Defect:



6. The Defect can and does arise after minimal mileage, falling far short of reasonable consumer expectations and Defendant's representations that the Shoes are suitable for high-mileage training and everyday running.

7. HOKA's warranty is ineffectual and requires consumers to bear the cost of shipping their defective shoes to HOKA, at which point HOKA arbitrarily and inconsistently determines whether the Defect was caused by a manufacturing issue or constitutes purportedly normal "wear and tear." Even where HOKA opts to replace the Shoes, purchasers are still out the substantial shipping costs associated with the evaluation process.

8. Plaintiffs and Class members suffered economic losses, including overpayment at the time of purchase, loss of the benefit of their bargain, and out-of-pocket costs pursing Defendant's ineffectual warranty. Plaintiffs seek damages, restitution, injunctive relief, and all other available remedies on behalf of themselves and the Class.

## PARTIES

9. Shawn Czerwien is a citizen and resident of Pennsylvania who purchased a pair of Clifton 9s from Defendant's website, hoka.com, on October 03, 2024. Almost immediately thereafter, the Shoes developed the "peeling" issue described herein following ordinary, intended use.

10. George Attia is currently a citizen and resident of Arizona; however, at all times relevant hereto he was living in the State of California. Mr. Attia purchased a pair of HOKA shoes from Defendant's website, hoka.com, on February 21, 2025, which were shipped to him in California. Almost immediately thereafter, the Shoes developed the "peeling" issue described herein following ordinary, intended use.

11. Karen Bunker is a citizen and resident of New York who purchased a pair of Clifton 9s from a third-party vendor, Fleet Feet, located at 115 Culver Road, Rochester, New York, on March 07, 2025. Almost immediately thereafter, the Shoes developed the "peeling" issue described herein following ordinary, intended use.

12. George Adams is a citizen and resident of Louisiana who purchased a pair of HOKA shoes from a third-party vendor, Dick's Sporting Goods, located at 3301 Veterans Memorial

Boulevard, Metairie, Louisiana on June 29, 2024. Almost immediately thereafter, the Shoes developed the "peeling" issue described herein following ordinary, intended use.

13. Defendant Deckers Outdoor Corporation ("Deckers") is a Delaware corporation with its principal place of business at 250 Coromar Drive, Goleta, California 93117. Deckers owns and operates the HOKA brand. HOKA is not a separate incorporated entity; it is a brand and division of Deckers. Deckers designed, manufactured, marketed, distributed, and warranted the Shoes and transacts substantial business nationwide, including in this District.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5 million in the aggregate, exclusive of interest and costs, and the number of claimants exceeds 100 persons, at least one of whom is a citizen of a different state than the Defendant.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant's unlawful course of conduct occurred in this District.

16. This Court may exercise general and specific personal jurisdiction over Defendant because (1) Defendant conducts regular business in California, (2) the claims alleged herein took place in California, and/or (3) Defendant has committed tortious acts within the State of California (as alleged, without limitation, throughout this complaint). Defendant is headquartered in California and advertisements on its website are regularly directed to and seen by California consumers considering purchasing goods from the Defendant.

## FACTUAL ALLEGATIONS

17. HOKA markets Clifton 9s as a cushioned, durable daily trainer suitable for high-mileage running. Defendant's advertising materials specifically emphasize the Shoes' supposed "improved outsole design" over other shoes and a "durabrasion rubber outsole" intended to "extend rubber longevity."

18. These claims are intended to, and do, persuade consumers to pay a premium price for Clifton 9s, which retail in excess of $150.

19. Despite these representations, the Shoes suffer from a common design and/or manufacturing flaw: a pervasive defect causing the outsole "pods" to **separate from the midsole, sometimes after mere days of normal use** (previously defined as the "Defect").

20. Contrary to HOKA's promises of a durable, high-end shoe with an extended life, the Defect creates a safety hazard and renders the Shoes functionally worthless.

21. HOKA has previously advised customers that the Defect is the result of a manufacturing issue that, upon information and belief, results from a process whereby the Shoes' outsole pods are only spot-bonded to the foam midsole with water-based polyurethane cement—a process highly sensitive to moisture, temperature, and surface preparation. Specifically, Clifton 9s use discrete rubber pods covering <45% of the outsole surface, leaving large exposed areas to save weight. Because each pod has minimal bond area, ordinary flexing induces peel forces. Defendant's factory adhesion is often under-cured and/or improperly primed, causing the Shoes' edges to lift within hours, allowing water intrusion that causes the remaining bond to irreparably fail.

22. Social media pages (*e.g.*, TikTok, Reddit, Facebook, and others) are rife with user reports like the following documenting identical failure patterns, confirming that the Defect is a systemic manufacturing or design flaw rather than isolated misuse:



23. Defendant knew or should have known that Clifton 9s were defective as a result of Defendant's pre-release testing, quality control, warranty claims, returns, retailer feedback, and consumer complaints. Indeed, Defendant observed these issues on a smaller scale in its Clifton 8 model; however, instead of correcting the issue, Defendant exacerbated it by utilizing the same ineffective bonding agents while minimizing adhesion points. All the while, HOKA continued to market Clifton 9s as durable, high-end training shoes, selling them at premium prices.

24. Reasonable consumers expect a daily trainer to perform for a reasonable service life consistent with industry norms. The Shoes do not meet these expectations, failing within a timeframe and mileage window that is materially shorter than represented, warranted, and expected.

25. Defendant offers a one-year warranty promising a defect evaluation and credit in the amount of the purchase price for one year, yet forces consumers to bear packaging and shipping costs while waiting weeks for Defendant to complete its evaluation.

26. Defendant arbitrarily administers its warranty, sometimes acknowledging that peeling as described herein is the result of a manufacturing issue, and other times taking the position that the peeling is due to "wear and tear" excluded from the scope of the warranty's coverage.

27. Plaintiffs and Class members would not have purchased the Shoes, or would have paid less for the Shoes, had they known of the Defect.

28. Plaintiff Shawn Czerwien purchased a pair of Clifton 9s from Defendant's website, hoka.com, on October 03, 2024.

29. Mr. Czerwien first noticed his HOKA shoes peeling in the fashion described herein within few weeks of purchase. He inquired with Defendant about a warranty; however, upon learning that he would need to pay shipping costs, and would be without his shoes for several weeks while Defendant evaluated their eligibility under the warranty, he declined to submit the shoes for warranty consideration.

30. Several months later Plaintiff again inquired about a warranty and this time was asked to provide pictures of the damage via email. Upon doing so, he was informed that HOKA would not replace the shoes, as the damage shown was purportedly "wear and tear."

31. Plaintiff George Attia purchased a pair of Clifton 9s from Defendant's website, hoka.com, on February 21, 2025.

32. Within a few months of regular use, Mr. Attia noticed his HOKA shoes peeling in the fashion described herein. He, too, eventually inquired with Defendant about a warranty claim. After paying shipping costs to send his Clifton 9s for evaluation, his claim was denied and his shoes returned to him as-is, without compensation.

33. Plaintiff Karen Bunker purchased a pair of Clifton 9s from third-party retailer, Fleet Feet, in Rochester, New York, on March 7, 2025.

34. Within a few months of regular use, Ms. Bunker noticed that her shoes were peeling in the fashion described herein. Ms. Bunker brought the shoes back to Fleet Feet, where they suggested she contact HOKA. Ms. Bunker then shipped her shoes back to HOKA, at her own expense, and requested either a refund or exchange due to the defect. HOKA subsequently denied the request and sent Ms. Bunker the shoes back as-is accompanied by a response advising only that she not get the shoes wet. No refund was provided for her shipping expenses.

35. After the shoes return, Ms. Bunker attempted to fix the shoes herself with glues and other home remedies, but the issue persisted on multiple outsole pods. Ms. Bunker then again shipped the shoes back to HOKA, at her own expense, with a letter demanding a cash refund, as the shoes should have been recalled or replaced the first time she returned them to HOKA. HOKA responded by providing her a $152 store credit to the HOKA website. The refund was not itemized and no proof of reimbursement for shipping costs exists. Ms. Bunker has not used the HOKA credit as of the date of this Complaint. HOKA retained possession of Ms. Bunker's shoes.

36. Plaintiff George Adams purchased a pair of HOKA shoes from third-party retailer, Dick's Sporting Goods, in Metairie, Louisiana on June 29, 2024.

37. Within a few months of regular use, Mr. Adams noticed his HOKA shoes peeling in the fashion described herein. The peeling issues rendered the Shoes useless. Mr. Adams did not make an attempt to return the Shoes.

38. Plaintiffs would not have purchased Clifton 9s had they known they would experience the foregoing.

39. Plaintiffs have provided notice to Defendant of acts alleged to violate the Consumer Legal Remedies Act. Defendant has not remedied the alleged violations of the Consumer Legal Remedies Act as of the date of this Complaint.

## CLASS ALLEGATIONS

40. HOKA brand's net sales were $1.81 billion in 2024, and $2.23 billion in 2025.

41. HOKA is predominantly a footwear brand, and shoe sales comprised the vast majority of its sales figures—well in excess of 50%.

42. Defendant's public filings describe the "Clifton" franchise as HOKA's largest. Upon information and belief, sales of Clifton 9s comprised between 10% and 20% of HOKA's shoe sales in years 2024 and 2025.

43. At an average of $150 per pair, HOKA has sold in excess of 100,000 pairs of Clifton 9s.

44. Accordingly, Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated ("the Class") pursuant to Federal Rule of Civil Procedure 23.

45. This action may be brought and properly maintained as a class action because resolution of this question is one of a common or general interest, and of many persons, and also because the parties are numerous, and it is impracticable to bring them all before the Court. Plaintiffs may sue for the benefit of all as representative parties pursuant to Federal Rule of Civil Procedure 23.

46. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> All persons who purchased HOKA's Clifton 9 shoes that experienced the peeling of the outsole "pods" lining the bottom of the shoe within one year of purchase.

47. Excluded from the Class definition are any immediate family members of the Judge to whom this case is assigned.

48. The proposed class shares a well-defined community of interest. Class treatment would provide substantial benefits to both the Court and the litigants, as set forth below.

49. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Class consists of approximately 100,000 persons.

50. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

i. Whether Clifton 9s suffer from a manufacturing and/or design defect that causes the outsole "pods" lining the bottom of the shoe to prematurely separate (previously defined as the "Defect");

ii. What caused the Defect;

iii. Whether Defendant misrepresented material information about the construction, quality or expected lifespan of Clifton 9s;

iv. Whether Defendant's warranty program is ineffectual to remedy the issues caused by the Defect;

v. Whether Defendant misled the Class in its description of its warranty program, or otherwise misrepresented the terms of its warranty program.

vi. Whether Plaintiffs and the Class are entitled to an injunction prohibiting Defendant from making misleading statements regarding Clifton 9s and/or Defendant's warranty program;

vii. Whether Plaintiffs and the Class are entitled to damages and/or other monetary penalties as a result of Defendant's acts and omissions described herein.

51. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' counsel are competent and experienced in litigating class actions.

52. Defendant has engaged in a common course of conduct toward Plaintiffs and the Class. The common issues arising from the Defendant's conduct affecting purchasers of Clifton 9s predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

53. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore

have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for the Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

54. Class certification also is appropriate because Defendant has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

55. Finally, all members of the purposed Class are readily ascertainable through their receipts, credit card statements, or other similar repositories of their purchasing history.

## CAUSES OF ACTION

### COUNT I — Breach of Express Warranty

56. Plaintiffs incorporate paragraphs 1–55 by reference as if set forth in full herein.

57. Defendant expressly warranted the quality, durability, and fitness of its Clifton 9s. by claiming, inter alia, that Clifton 9s are durable, high-end running shoes suitable for "everyday miles" covered by runners and walkers alike. Consistent therewith, Defendant touts that the Shoes have an "improved outsole design" over other shoes and a "durabrasion rubber outsole" intended to "extend rubber longevity."

58. These statements are not true in light of the manufacturing and/or design Defect(s) described at length herein.

59. Defendant further advertises a one-year warranty against defective materials and workmanship.

60. Defendant's warranty is ineffective and misleading insofar as it requires customers to bear the cost of returning the defective products to the Defendant. Products are then evaluated by Defendant to determine eligibility for returns, with Defendant retaining the right to deny even obvious defects that arise immediately after purchase as alleged "wear and tear." Even where returns are accepted, customers are not reimbursed the shipping cost associated with returning to the product to the Defendant.

61. Moreover, Defendant takes up to three weeks to evaluate warranty claims, effectively forcing consumers to purchase new shoes while they await Defendant's subjective warranty determination.

62. The Shoes did not conform to the express warranties and failed within an unreasonably short period of time after they were purchased.

63. Plaintiffs and Class members were damaged thereby.

**COUNT II — Breach of Implied Warranty of Merchantability**

64. Plaintiffs incorporate paragraphs 1–63 by reference as if set forth in full herein.

65. Plaintiffs and other consumers who purchase Clifton 9s expect the shoes to be durable, well-constructed and suitable for normal use as a running and walking shoe.

66. The Shoes were not fit for the ordinary purposes for which such goods are used, such as providing durable, stable cushioning for daily running.

67. Plaintiffs and Class members were damaged thereby.

**COUNT III — Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq.**

68. Plaintiffs incorporate paragraphs 1–67 by reference as if set forth in full herein.

69. The Shoes are consumer products; Plaintiff and Class members are consumers; and Defendant is a warrantor/supplier.

70. Defendant breached written and implied warranties as described in the preceding Counts.

71. The amount in controversy for each individual claim exceeds $25 and the aggregate exceeds $50,000.

72. Plaintiffs seek all remedies available under the Act.

**COUNT IV — Violations of California's Unfair Competition Law**

73. Plaintiffs incorporate paragraphs 1-72 as if incorporated by reference herewith.

74. The Unfair Competition Law prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

75. Defendant represents that Clifton 9s are durable, high-end running shoes suitable for "everyday miles" covered by runners and walkers alike. Consistent therewith, Defendant touts that

the Shoes have an "improved outsole design" over other shoes and a "durabrasion rubber outsole" intended to "extend rubber longevity."

76. These statements are not true in light of the manufacturing and/or design Defect(s) described at length herein.

77. Defendant further advertises a one-year warranty against defective materials and workmanship.

78. Defendant's warranty is ineffective and misleading insofar as it requires customers to bear the cost of returning the defective products to the Defendant. Products are then evaluated by Defendant to determine eligibility for returns, with Defendant retaining the right to deny even obvious defects that arise immediately after purchase as alleged "wear and tear." Even where returns are accepted, customers are not reimbursed the shipping cost associated with returning to the product to the Defendant.

79. Moreover, Defendant takes up to three weeks to evaluate warranty claims, effectively forcing consumers to purchase new shoes while they await Defendant's subjective warranty determination.

80. Each of the aforementioned acts is unlawful, unfair and unfraudulent within the meaning of the Unfair Competition Law.

81. As a direct and proximate result of Defendant's actions, Plaintiffs suffered actual damages, including but not limited to, the purchase price of Plaintiffs' Clifton 9s.

**COUNT V — Unjust Enrichment (in the alternative)**

82. Plaintiffs incorporate paragraphs 1–81 as if set forth in full herein.

83. Plaintiffs and Class members conferred benefits on Defendant by purchasing the Shoes at inflated prices.

84. Retention of that benefit is unjust in light of the undisclosed defects.

**COUNT VI — Violation of California's Consumer Legal Remedies Act: Cal. Civ. Code § 1750 et seq.**

85. Plaintiffs incorporate paragraphs 1-84 as if incorporated by reference herewith.

86. Plaintiffs bring this cause of action on behalf of themselves and the Class.

87. Plaintiffs and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

88. Plaintiffs and the Class, on the one hand, and Defendant, on the other hand, engaged or intended to engage in "transactions" as that term is defined by California Civil Code § 1761(e).

89. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices under the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and/or which did result in, the sale of goods to Plaintiffs and the Class members as consumers.

90. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of fact in its graphics and advertisements transmitted and displayed to Class members. Defendant did this by claiming that Clifton 9s are durable, high-end running shoes suitable for "everyday miles" covered by runners and walkers alike. Further, Defendant claimed that the Shoes have an "improved outsole design" over other shoes and a "durabrasion rubber outsole" intended to "extend rubber longevity."

91. Defendant violated Section 1770(a)(5) of the California Civil Code by "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have…" – namely, that goods offered for sale were durable, high-end running shoes suitable for "everyday miles" and that the shoes had an "improved outsole design" with a "durabrasion rubber outsole" intended to "extend rubber longevity."

92. Defendant violated Section 1770(a)(7) of the California Civil Code by representing that the Clifton 9s were of a particular standard, quality or grade when they are not – namely, by misrepresenting that the shoes were premium, high-milage daily trainers when they were not.

93. Defendant violated Section 1770(a)(9) of the California Civil Code by advertising the Clifton 9s with intent not to sell them as advertised – namely, by advertising claims of improved durability and longevity of the shoes in spite of design and manufacturing defects yielding premature pad separation (the Defect).

94. Defendant violated Section 1770(a)(16) of the California Civil Code by representing that the Clifton 9s were supplied in accordance with previous representations when they were not –

namely, by forwarding a warranty that purported to provide a full replacement of the shoes while failing to disclose that the shipping costs would be borne by the consumers and that claims were subject to an arbitrary, slow, and unfair evaluation process.

95. Defendant violated Section 1770(a)(19) by inserting an unconscionable provision in the consumer contract – namely that the warranty process required consumer-paid shipping to return the shoes to HOKA and that the warranty process imposed delays and hurdles that made the remedy illusory in practice.

96. Defendant knew or should have known through the exercise of reasonable care that its statements were inaccurate and misleading.

97. Defendant's representations deceived Plaintiff and reasonable consumers.

98. Plaintiff saw, read, and reasonably relied on Defendant's advertisements and policies when contemplating purchasing Defendant's Clifton 9 product. Defendant's misrepresentations were a substantial factor in consumers' purchase decisions.

99. In addition, Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Defendant's products.

100. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

101. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because they would not have contemplated purchasing or purchased Defendant's products if they had known the advertisements of the quality, longevity, and warranty of the Clifton 9s were not legitimate and as represented.

102. Accordingly, pursuant to California Civil Code § 1780(a), Plaintiffs, on behalf of themselves and all other members of the Class, seek injunctive relief, restitution, actual damages, and punitive damages.

103. CLRA § 1782 NOTICE. On September 09, 2025, a CLRA demand letter was sent to Defendant's corporate headquarters via certified mail (return receipt requested), that arrived September 29, 2025 and provided notice of Defendant's violations of the CLRA as described herein

and demanded that Defendant correct the unlawful, unfair, false, and/or deceptive practices alleged here. A copy of the served letter is attached hereto.

104. A CLRA venue affidavit is attached hereto.

105. As of the date of filing, Defendant has not responded to Plaintiffs' counsel's demand.

## REQUEST FOR INJUNCTIVE RELIEF

106. Plaintiffs seek injunctive and equitable relief requiring Defendant to (a) disclose the Defect; (b) remediate and/or repair or replace defective Shoes; (c) reform warranties that fail of their essential purpose and are unconscionable; (d) implement appropriate quality-control changes; and (e) provide restitution and disgorgement of ill-gotten gains.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Shawn Czerwien, George Attia, Karen Bunker, and George Adams on behalf of themselves and the Class, pray for judgment against Defendant as follows:

A. Certification of the Class(es), appointment of Plaintiffs as class representatives, and appointment of undersigned counsel as class counsel;

B. Damages, restitution, and disgorgement in an amount to be determined at trial;

C. Injunctive and declaratory relief;

D. Pre- and post-judgment interest as allowed by law;

E. Reasonable attorneys' fees and costs as allowed by law; and

F. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date: December 4, 2025

Respectfully submitted,

*/s/Daniel Centner*

DANIEL CENTNER (*pro hac vice*)
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
935 Gravier St. Ste. 1600
New Orleans, LA 70112
Telephone: (504) 523-2434

Facsimile: (504)-608-1465
dcentner@peifferwolf.com

BRIAN J. PERKINS (Cal. Bar No. 315870)
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 766-3544
Facsimile: (415) 840-9435
Email: bperkins@peifferwolf.com

MARTIN P. SCHRAMA (*pro hac vice pending*)
STEFANIE L. COLELLA-WALSH (*pro hac vice pending*)
STARK & STARK
100 American Metro Blvd.
Hamilton, NJ 08619
Telephone: (609) 895-7261
Facsimile: (609) 895-7395
Email: mschrama@stark-stark.com
scolellawalsh@stark-stark.com

*Attorneys for Plaintiffs and the Class Members*

# CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

*/s/Daniel Centner*
Daniel Centner